UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Global Maintech Corporation and
Global Maintech, Inc.,

                    Plaintiffs,

v.                                                          Civ. No. 04-4638 (JNE/SRN)
                                                            ORDER
AIG Technologies, Inc., f/k/a
American International Group Data Center, Inc.,

                    Defendant.

---

William A. Erhart, Esq., Erhart & Associates, L.L.C., appeared for Plaintiffs Global Maintech Corporation and Global Maintech, Inc.

F. Ross Boundy, Esq., Christensen O'Connor Johnson Kindess, PLLC, appeared for Defendant AIG Technologies, Inc., f/k/a American International Group Data Center, Inc.

---

Global Maintech Corporation and Global Maintech, Inc. (collectively, Plaintiffs), brought this action against AIG Technologies, Inc. (AIG), alleging breach of contract and patent infringement.  The case is before the Court on AIG's Motion for Summary Judgment of Dismissal of Plaintiffs' First Cause of Action for Breach of Contract, AIG's Motion for Summary Judgment of Noninfringement Based Upon Res Judicata, and Plaintiffs' Motion for Partial Summary Judgment on Claim 1 of U.S. Patent No. 6,112,237 ('237 Patent).  For the reasons set forth below, the Court grants AIG's motion for summary judgment of noninfringement, denies Plaintiffs' motion for partial summary judgment, and dismisses Plaintiffs' breach of contract claim for lack of jurisdiction.

## I.      BACKGROUND

In April 2002, Global Maintech Corporation and AIG entered into a Virtual Command Center Master Contract (Master Contract).  The Master Contract comprised two separate

agreements, a Software License Agreement (License Agreement) and a Hardware Maintenance Agreement (Maintenance Agreement). Under the License Agreement, Global Maintech Corporation granted AIG a non-exclusive license to use various software programs. The License Agreement provided that it would "remain in effect for a period of ninety-nine (99) years unless earlier terminated in accordance with the terms of [the] Agreement." Section 6.2 granted AIG the right to terminate the License Agreement by giving sixty days written notice to Global Maintech Corporation. Upon termination of the License for any reason, AIG was required to cease use of the licensed programs and was obligated to return or destroy the licensed programs and any other "Confidential Information in tangible form." Under the Maintenance Agreement, Global Maintech Corporation agreed to provide maintenance for the products licensed to AIG under the License Agreement and various related hardware "so as to assure that the Equipment [would] at all times perform in accordance with the requirements specified." After being renewed in 2003, the relevant schedules that described the equipment to be maintained under the Maintenance Agreement were due to expire on March 31, 2004.

On February 4, 2004, Global Maintech Corporation provided a renewal notice to AIG, reminding AIG that its "annual software license and hardware maintenance on the Virtual Command Center expires on March 31, 2004." AIG's director of global operations, Vincent Gianni, responded by e-mail on February 24, 2004: "Upon expiration of our current contract which expires 3/31/04, we will not be renewing. Please CANCEL the License and Hardware maintenance agreement as [of] 3/31/04. If you have any questions regarding this cancellation notice please contact me." AIG continued to use some of the licensed software after March 31, 2004, while it was transitioning from Global Maintech Corporation's technology to I/O Concepts, Inc.'s technology for its computer monitoring services.

Prior to providing the February 4, 2004, renewal notice, on July 21, 2003, Plaintiffs filed suit against I/O Concepts alleging infringement of certain of their patents (I/O Concepts Action). Specifically, Plaintiffs alleged that I/O Concepts infringed U.S. Patent No. 6,035,264; U.S. Patent No. 6,044,393; U.S. Patent No. 6,112,237; and U.S. Patent No. 6,157,956, by selling, licensing, making, using, and encouraging others to make and use the "software/hardware system referred to as 'X-Direct 3270 Multi-Host Coax Gateway,' 'Console Consolidation System (CCS),' 'CCS Smart Client,' and others." On August 7, 2003, Global Maintech Corporation sent AIG a letter informing it that Plaintiffs had initiated litigation against I/O Concepts for patent infringement. The letter advised AIG that Plaintiffs had information that AIG was using I/O Concepts' products and that such use infringed Global Maintech Corporation's patents.

On December 6, 2004, I/O Concepts moved for summary judgment of noninfringement in the I/O Concepts Action. Plaintiffs opposed I/O Concepts' motion in part by submitting evidence of AIG's use of I/O Concepts' technology. Notwithstanding this evidence, the Honorable Paul A. Magnuson concluded that Plaintiffs were unable to prove that the accused software/hardware infringed any of the four patents at issue in the action. Accordingly, the Court granted I/O Concepts' motions for summary judgment on March 7, 2005. *Global Maintech Corp. v. I/O Concepts, Inc.*, Civ. No. 03-4184, slip op. (D. Minn. Mar. 7, 2005) (PAM/RLE).

Plaintiffs brought the present action on October 26, 2004 (Present Action). They allege that AIG breached the License Agreement by continuing to use Plaintiffs' licensed software after it terminated the License Agreement and that AIG "is willfully infringing the 6,035,264; 6,044,393; 6,112,237; and 6,157,956 patents" by making, using, and/or inducing others to make

and use within the United States I/O Concepts' "ESCON Gateway," "Console Consolidation System (CCS)," and "CCS SmartClient."

## II.    DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A.    Patent Infringement Claims

AIG argues that Plaintiffs' patent infringement claims in the Present Action are barred under the doctrine of res judicata.

> Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.  Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.  Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.

*Brown v. Felsen*, 442 U.S. 127, 131 (1979) (citations and quotations omitted).

To determine whether the doctrine of res judicata bars litigation of a claim, a court must consider:  (1) whether a court of competent jurisdiction rendered the prior judgment; (2) whether the prior judgment was a final judgment on the merits; (3) whether the same cause of action and the same parties or their privies were involved in both cases; and (4) whether the party against whom res judicata is asserted had a full and fair opportunity to litigate the matter in the proceeding that is to be given preclusive effect.  *See W.A. Lang Co. v. Anderberg-Lund Printing Co. (In re Anderberg-Lund Printing Co.)*, 109 F.3d 1343, 1346 (8th Cir. 1997); *see also Banks v. Int'l Union of Elec., Elec., Technical, Salaried & Mach. Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004); *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1014 (8th Cir. 2002).  In this case, there is no dispute that a court of competent jurisdiction—this Court—rendered the prior judgment in the I/O Concepts Action.  Moreover, "[i]t is well established that summary judgment is a final judgment on the merits for purposes of res judicata."  *See Dicken v. Ashcroft*, 972 F.2d 231, 233 n.5 (8th Cir. 1992).  The fact that such a judgment has been appealed does not diminish the res judicata effect of the judgment.  *See Dickinson v. Ewing (In re Ewing)*, 852 F.2d 1057, 1060 (8th Cir. 1988).  Accordingly, the March 7, 2005, Order granting I/O Concepts' motion for summary judgment was a final judgment on the merits of that action.  AIG has, as a matter of law, satisfied its burden of establishing the first two elements of res judicata.

The Court turns to the question of whether the parties are the same in the Present Action and the I/O Concepts Action.  The plaintiffs in both actions are Global Maintech Corporation and Global Maintech, Inc.  Although the named defendants are different, "[i]t is well settled . . . that claim preclusion may be invoked by and against those in privity with parties."  *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995).  Here, AIG is being sued in its capacity as a user of I/O Concepts' products, and Plaintiffs were aware of AIG's use of I/O

5

Concepts' products during the pendency of the I/O Concepts Action.  Moreover, I/O Concepts is contractually obligated to and is controlling AIG's defense of the Present Action.  In light of these facts, the Court concludes that I/O Concepts and AIG are in privity with one another for purposes of this litigation.  *Cf. Mars*, 58 F.3d at 619-20 (applying Third Circuit law to hold that "a plaintiff who chooses to bring two separate actions against two tortfeasors who are jointly responsible for the same injury runs the risk that the court will find the parties sufficiently related that the second action is barred by claim preclusion."); *Transclean Corp. v. Reg'l Car Wash Distribs., Inc.*, Civ. No. 02-1138, 2004 WL 1453509, at *3 (D. Minn. June 18, 2004) (holding that claims against user of earlier-sued manufacturer's products were barred by res judicata because plaintiff "was or should have been aware" of later-sued user's alleged infringing use during the pendency of the first litigation).  Thus, AIG has, as a matter of law, satisfied its burden of establishing this part of the third element of res judicata.

The Court next turns to the question of whether the patent claims in the Present Action and the I/O Concepts Action are the same.  Plaintiffs argue that the claims are not the same because in the Present Action they have alleged that AIG's *use* of the I/O Concepts technology infringes their patents, whereas in the I/O Concepts Action, they alleged that I/O Concepts' *manufacture, sale, and promotion* of the technology infringed Plaintiffs' patents.  When determining whether two causes of action are the same for res judicata purposes, the Court inquires whether the new claim arises out of the same nucleus of operative facts as the prior claim.  *Banks*, 390 F.3d at 1052.  Generally, "the final determination of infringement issues between the patent holder and the manufacturer alleged to have infringed, determines the same issues as to the manufacturer's customer." *Minn. Mining & Mfg. Co. v. Superior Insulating Tape Co.*, 284 F.2d 478, 485 (8th Cir. 1960) (citing *Kessler v. Eldred*, 206 U.S. 285 (1907)).  That is,

where a patentee alleges that the same products infringe the same patents in separate suits against a manufacturer and the manufacturer's customer, the patentee's infringement claims against the manufacturer's customer generally arise out of the same nucleus of operative facts as the patentee's claims against the manufacturer.

In this case, Plaintiffs allege that AIG infringed the same patents Plaintiffs accused manufacturer I/O Concepts of infringing.  Plaintiffs also identify the same products as the infringing products.  Plaintiffs alleged the following in the I/O Concepts Action:

> 17.    Upon information and belief, beginning both before and continuing after the issuance of [Plaintiffs'] patents, *Defendants continued to sell/license software/hardware system referred to as "X-Direct 3270 Multi-Host Coax Gateway," "Console Consolidation System (CCS)," "CCS SmartClient," and others* and encouraged others to use the infringing software/hardware.  The purpose and function of Defendant's software/hardware is identical and/or substantially equivalent to Plaintiffs' patented methods/processes such that it infringes upon Plaintiffs' patents.

(Emphasis added.)  Plaintiffs further alleged:

> 19.    *Defendant*, with full knowledge of Plaintiffs' rights, *is willfully infringing the 6,035,264; 6,044,393; 6,112,237; and 6,157,956 patents* by making and using within the United States software and hardware that employs the methods, processes, and system of said patents, and is willfully inducing the infringement of and contributorily infringing the said patents by inducing others to make and use within the United States software and hardware that employs the methods, processes, and systems of the said patents.

(Emphasis added.)  Similarly, in the Present Action, Plaintiffs allege:

> 28.    Upon information and belief, after issuance of the patents, *Defendant used* hardware/software including, but not limited to, *the "ESCON Gateway," "Console Consolidation System (CCS)," "CCS SmartClient,"* that infringes the Plaintiffs' patents both literally and under the doctrine of equivalents.  The purpose and function of Defendant's hardware/software is identical and/or substantially equivalent to Plaintiffs' patented methods/processes such that it infringes upon Plaintiffs' patents.

> 29.    *Defendant*, with full knowledge of Plaintiffs' rights, *is willfully infringing the 6,035,264; 6,044,393; 6,112,237; and 6,157,956 patents* by making and/or using within the United States software and hardware that employs the methods,

processes, and system of said patents, and is willfully inducing the infringement of and contributorily infringing the said patents by inducing others to make and use within the United States software and hardware that employs the methods, processes, and systems of the said patents.

(Emphasis added.)[1]

Notwithstanding the similarities in the allegations in the two actions, Plaintiffs assert that this case falls outside the rule articulated in *Minnesota Mining & Manufacturing* because AIG may be putting I/O Concepts' products to a unique use. According to Plaintiffs, that unique use infringes their patents even if I/O Concepts' manufacture of the software/hardware does not infringe. Plaintiffs, however, have neither pled nor offered any evidence in support of this theory. In fact, Plaintiffs effectively conceded at oral argument that, at present, they do not have any evidence that AIG's use of I/O Concepts' products is unique. Plaintiffs have had ample opportunity to discover such evidence. Not only were Plaintiffs aware of AIG's use of I/O Concepts' products while the I/O Concepts Action was pending, but Plaintiffs also deposed an AIG employee in the course of that litigation and relied heavily on AIG's use of I/O Concepts' products in support of its claims against I/O Concepts. For these reasons, the Court rejects Plaintiffs' argument that this case falls outside the rule established in *Minnesota Mining & Manufacturing*. Plaintiffs' claims against AIG arise out of the same nucleus of operative fact as their claims against I/O Concepts; the causes of action are, therefore, the same.

Finally, Plaintiffs argue that they did not have a full and fair opportunity to litigate their claims against AIG in the I/O Concepts Action for two reasons. First, in the March 7, 2005,

---

[1]     The Court notes that in the Present Action, Plaintiffs allege that the "ESCON Gateway" infringes their patents; this software/hardware system was not specifically named in the I/O Concepts Action. Plaintiffs do not, however, argue that this system was excluded from its patent infringement claims against I/O Concepts, and the allegations in the I/O Concepts Action included "other" unnamed software/hardware systems. Accordingly, the Court does not view the slight differences in the allegations sufficient to warrant a conclusion that the claims are different.

Order, Judge Magnuson concluded that to infringe Plaintiffs' products, I/O Concepts' products must "simultaneously" manage heterogeneous computer systems.   Plaintiffs maintain that I/O Concepts introduced this limitation for the first time at the summary judgment hearing and, as a result, Plaintiffs "never had an opportunity to either address or litigate the issue."   The Court disagrees.   Plaintiffs not only had an opportunity to convince the Court at oral argument that this claim construction was erroneous, they are currently litigating this very issue on appeal in the I/O Concepts Action.   In fact, Plaintiffs agree that this issue should not be relitigated in this action. *See* Pls.' Mem. in Supp. of Its Mot. for Partial Summ. J. at 3 ("Because the issue of whether 'simultaneously' is a claim requirement is on appeal, Plaintiffs are not asking the court to make a determination as to whether it should be included, but are asking the court to allow Plaintiffs the right to show that Defendant's use encompasses 'simultaneously,' as well as every other claim requirement.").

Second, Plaintiffs argue that critical evidence upon which they will rely in this case was not admissible in the I/O Concepts Action, but is admissible as a party admission in the Present Action.   Specifically, Plaintiffs point to statements made by Steve Lanham, the AIG employee responsible for all computer hardware at the AIG data center, to one of Plaintiffs' employees. Plaintiffs argue that these statements reveal that AIG's use of the I/O Concepts product was an infringing use.  The Court disagrees.  Judge Magnuson's March 7, 2005, Order specifically noted that even if Lanham's statements had been admissible, they did not prove infringement.   Thus, Plaintiffs had a full and fair opportunity to litigate whether AIG's use of the accused products infringed Plaintiffs' patents.  AIG has, as a matter of law, satisfied its burden with respect to this element of its defense.

In sum, the Court concludes that res judicata bars Plaintiffs' patent claims against AIG. Accordingly, the Court grants AIG's motion for summary judgment with respect to Plaintiffs' patent infringement claims and denies Plaintiffs' motion for partial summary judgment of Claim 1 of the '237 Patent.

**B.      Breach of Contract Claim**

In addition to alleging claims of patent infringement, Plaintiffs allege that AIG is liable for breach of contract.  Specifically, Plaintiffs allege that Gianni's February 24, 2004, e-mail had the effect of terminating the License Agreement under Section 6.2 of the License Agreement.  As a result, under the terms of the License Agreement, AIG was required to cease using the licensed software.  According to Plaintiffs, AIG did not do so and is therefore in breach of the License Agreement.

Plaintiffs have not asserted a basis for the Court's exercise of jurisdiction over their breach of contract claim.  They likely intended that the Court would exercise supplemental jurisdiction over the claim pursuant to 28 U.S.C. § 1367(a) (2000).  That statute permits a district court to exercise supplemental jurisdiction over claims that are part of the same case or controversy as the claims that fall within the district court's original jurisdiction.  *Id.*  Claims are part of the same case or controversy for purposes of § 1367 if they "derive from a common nucleus of operative fact."  *See Myers v. Richland County*, 429 F.3d 740, 746 (8th Cir. 2005). Here, Plaintiffs' breach of contract claim derives from AIG's unauthorized use of Plaintiffs' software, whereas Plaintiffs' patent claim—the basis of the Court's original jurisdiction—derives from AIG's use of I/O Concepts' software/hardware.  The nuclei of operative fact are, in other words, different; Plaintiffs' breach of contract and patent claims therefore are not part of the same case or controversy.  The Court does not have jurisdiction over Plaintiffs' breach of

contract claim under 28 U.S.C. § 1367.  Because Plaintiffs do not assert any other jurisdictional

basis for the breach of contract claim,[2] the Court dismisses the claim for lack of subject matter

jurisdiction.

## III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.   AIG's Motion for Summary Judgment of Dismissal of Plaintiffs' First Cause of Action for Breach of Contract [Docket No. 23] is DENIED AS MOOT.

2.   AIG's Motion for Summary Judgment of Noninfringement Based Upon Res Judicata [Docket No. 27] is GRANTED.

3.   Plaintiffs' Motion for Partial Summary Judgment [Docket No. 31] is DENIED.

4.   Count I of Plaintiffs' Complaint [Docket No. 1] is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

5.   Count II of Plaintiffs' Complaint [Docket No. 1] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 15, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[2]   Although there may be diversity jurisdiction in this case, Plaintiffs have not asserted diversity as a jurisdictional basis.  They have also failed to allege AIG's principal place of business.  As a result, Plaintiffs have failed to adequately allege diversity jurisdiction.  *See Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("In order to adequately establish diversity jurisdiction, a complaint must set forth with specificity a corporate party's state of incorporation *and* its principal place of business.  Where the plaintiff fails to state the place of incorporation or the principal place of business of a corporate party, the pleadings are inadequate to establish diversity.").